Next case on the docket is 5-12-155 People v. Douglas v. L. Douglas Good morning, Your Honor. May it please the Court and the Counsel. Darren Miller from the State Appellate Defender's Office on behalf of Curtis Douglas. Your Honor, Mr. Douglas was convicted of stalking and driving with a revoked driver's license. On appeal, we maintain that he was not proven guilty of either of those offenses and also that the stalking statute or the newer version of the stalking statute is unconstitutional on its face because it potentially punishes innocent conduct. For the purposes of this argument, I'd like to only proceed on the stalking issues, if that's okay with Your Honors, and rely on the briefs for the driving while revoked argument. Your Honors, in order to find someone guilty of stalking under the new statute, the State has to prove a course of conduct. And for a course of conduct, there has to be at least two acts. And the way they proved that here was the first act was a domestic battery to his wife, Jane. He didn't plead guilty to that, so we're not disputing that a reasonable jury couldn't have found that incident occurred. However, for the second act, and that's an act that occurred about a year after the first one, July 19, 2011, the State alleged that Curtis threatened his wife, Jamea, with a knife. That she lied, essentially lied to the 911 operator and the police, and she lied because she was making an argument with Curtis and she just wanted him out of the house. And so that was her way of getting him out of the house. So what you have here is the only proof that this crime occurred or that the defendant was involved comes from the prior inconsistent statements that Jamea made to the police that were introduced as substantive evidence. However, if you look at the Fifth District case of People v. Parker, this court rejected the position that the State can rely exclusively on a prior inconsistent statement in order to establish guilt. And Parker, there were actually three prior inconsistent statements that the State relied on, and it was for murder, an attempted murder case. And this court concluded that because that was all that there was, there was no other evidence aside from that, that simply was not enough. Now, there's some dispute about whether Parker sets forth a per se rule. I submit that it does. However, that's not even necessary under the facts of this case. Because certainly in Parker, there were three prior inconsistent statements. Here, you only have one prior inconsistent statement. And also important to note is that in Parker, there was at least independent evidence that the crime occurred. In other words, there was no dispute that someone had been murdered or that the other person had been shot. In fact, here, not only is there no independent evidence that the defendant was involved in threatening his wife, there's no independent evidence that that crime ever occurred. So here, the State is relying completely on a prior inconsistent statement to show that now that the defendant was involved, the crime never occurred. This was tried in front of a jury out of credibility of the witnesses, which is a jury determination figure into the construct that you're arguing to us. Right. I mean, apparently, presumably, the jury found that they believe the prior inconsistent statement. However, our position is, and it's Parker, that's just not enough. No rational jury can come to that conclusion. And it's hard to imagine a weaker type of evidence than just a prior inconsistent statement. Your position is, Parker tells us, that a prior inconsistent statement, even if believed, is legally insufficient. Correct. And even if Parker didn't go that far, certainly Parker in all the cases say that, look, the facts of this case are certainly more difficult, does not establish that the crime occurred as compared to Parker. So, but even if you assume that the State, that that is good enough to prove that two acts occurred, the second act occurred, the State still has to prove a course of conduct. And if I could refer to the statute, the stalking statute says a person commits stalking when he or she knowingly engages in a course of conduct directed at a specific person. And here she knows, or should know, this course of conduct would cause a reasonable person to fear for his or her safety. And if you look further at the stalking statute, they define courses of conduct as two or more acts, including, but not limited to acts, and it goes through a whole laundry list. So essentially, two or more acts. And they define reasonable person as a person in the victim's situation. So the State would have to show that the course of conduct, and not just the last act, but both of the acts taken into conjunction with a lot of the course of conduct was what would cause a reasonable person to fear for their safety. And in order to properly evaluate that, you'd have to kind of fill in the gaps and set a timeline where this is a five-year marriage. They were married in 2006. The first act, the domestic battery, occurred on August 23, 2010. And the alleged incident with the knife was on July 19, 2011, about a year later. So all the State put forth was that over a five-year marriage, there were two isolated incidents. Well, let me ask you this. The statute doesn't delineate a timeframe. Isn't it a question for the jury as to whether two acts within a five-year period would meet the criteria of the statute? They may decide that it doesn't, that the first one was too isolated. It doesn't constitute a course of conduct. They may have decided, as apparently they did in this situation, that it was of a sufficient character and had enough of an impression, and you have the guilty plea and everything, that it does constitute a course of conduct. Wouldn't it really be a jury question and not a question of a bright-line timeframe for the contracts? I'm absolutely not saying there should be a bright-line timeframe. And every case is going to be different. But for a case like this, when you're looking at a marriage over five years, you can only say, like, two isolated acts over a five-year period, concluding he's a stalker, is kind of like akin to two drunken binges over a five-year period to prove someone's an alcoholic. You need more filled in in order to prove. And if you look at the stalking statute again, it's from a reasonable person in the victim's situation. So if the state's not going to present proof what her situation was, a rational jury can't arrive at a conclusion of what a reasonable person in her situation would have done if they don't know what her situation was. Just two acts don't establish how she was living and the type of life they lived. So I submit under the facts of this case, the evidence isn't sufficient. So for those reasons, the state failed to prove beyond a reasonable doubt. Is there any evidence in this case? Weren't there seven children involved here? Between the two marriages, they had one. I don't know how many. Yeah, there were seven children involved, I believe. I'm trying to remember. I think she said at least three of the children were present. I don't believe the state does. My question is, some were his and some were hers and some were both. Were any of them adopted? So is there, down the road, is there some kind of a, who's taking care of the children that aren't hers? If they weren't adopted. Yeah, there was no evidence presented as to whether they were adopted. I just want to know about director. Yeah, there was no evidence as to that. Thank you, counsel. Sure. And then the second issue is whether or not the stalking statute is unconstitutional. Preliminarily, the state challenged the standing to make this argument that the stalking statute is unconstitutional because it's capable of punishing innocent conduct. However, in the recent Supreme Court case of Aguilar, which found that the aggravated unlawful use of weapons statute is unconstitutional, the Supreme Court clarified that the defendant has the standing to make a facial challenge to a statute regardless of whether he's personally the one affected. Although I guess he is a person who's directly injured because he's prosecuted under the statute and was found guilty. So under Aguilar, there is standing. Going on with the merits, if you look at the statute, we have some examples in our brief about how an innocent person could try to get caught in the web of this statute. And for example, a pharmacist, if on two different times the pharmacist fills a prescription and tells the patient that this is a dangerous drug and you could die, you take this medication, that's a possibility, a reasonable person could be afraid of that. And if you look at the stalking statute, a person commits stalking when he or she knowingly engages in the course of conduct. Well, you got the two acts, the two communications to the patient that the medication could injure the patient directed to a specific person, and the pharmacist should know that it would cause a reasonable person to fear of safety. And we have other examples in the brief, so I'm not going to reiterate those. I think you're better off if you use what they do on television. I don't know, but drugged advertising could cause death. Right. Exactly. And there's a whole array of cases. I cited Madrigal is the most recent one, which found the identity theft statute unconstitutional on its face for punishing innocent conduct. And they basically held it because you could use Internet to look up how a neighbor did in a marathon. That got caught in front of the statutes. That's innocent conduct. Therefore, it's unconstitutional on its face. And what you have here is the same situation where, although the intent certainly is good, it's just too broad of a statute and it potentially punishes innocent conduct. So for these reasons, Your Honor, we'd ask that this court reverse Curtis's convictions for stopping. Thank you. Thank you, counsel. May I please report, counsel? My name is Sharon Chanahan, and I represent the people of the state of Illinois. I guess great minds think alike, because it was my intention to discuss whether a prior inconsistent statement is sufficient for conviction and also to deal with the constitutionality of the stopping statute. So that's what I'll focus on. The state has presented, I believe it was five, at least five cases that have looked at whether a prior inconsistent statement in and of itself is enough to support a conviction and have particularly looked at what Parker says. I would note that several of the cases that have examined Parker have said that Parker doesn't sweep nearly as broadly as the defendant says it does. It does not stand for the proposition of law that a recanted prior inconsistent statement cannot support a criminal conviction. Instead, it should be interpreted on the unique facts of the cases. For example, in People v. Zizzo, the court said these cases, referring to Reyes and Parker, clearly turn on their facts. As we read Reyes and Parker, the court in each of these cases found under the particular facts and circumstances at issue that the recanted inculpatory statements could not support the defendant's conviction. Parker had a really, the prior inconsistent statement in and of itself was extremely questionable. Now, I think we can, well, I'd like to pause here for a moment because the defendant has argued that all the cases cited by the state found some corroborating evidence. And that, therefore, when the court went on to say in any case a prior inconsistent statement standing alone is sufficient to support a conviction, the defendant says all of those cases, all of that language on all of those cases is dictum. And he seems to be arguing that any time an appellate court issues a decision that says we think this, and in any case we think this, then that second part is dictum. And that's certainly not the true definition of dictum. But what came to my mind is cases where error is alleged and the appellate court says, oh, we don't think this was error. But in any case, if it was error, we don't think it's plain error. And then they go on to discuss the application of the plain error doctrine and why it's not plain error. That's not dictum. That's a decision that it's not plain error. Likewise, in the cases cited by the court, in all of those cases, there was a tiny little bit of corroboration, very small. The court does point out corroboration. But then they go on. They could not be clearer in holding, specifically holding, that a prior inconsistent statement can be sufficient to support a conviction. In People v. Curtis, the court rejected any notion that there was a different standard of review for reviewing cases where the only evidence was a recanted prior inconsistent statement. They went on to say, and I'm quoting here, when an accused is convicted in appeals, one standard applies to all evidence. Evidence of prior inconsistent statements, even if the declarant has recanted those statements, should be treated no differently. Once a jury or trial court has chosen to return a guilty verdict based upon a prior inconsistent statement, a reviewing court not only is under no obligation to determine whether the declarant's testimony was substantially corroborated, but it may not engage in such an analysis. People v. Thomas adopted the reasoning in Curtis. They went on to point out that when a witness's statement is admitted under Section 115-10.1, and the tests imposed by that section are sufficiently rigorous, that if the statement is properly admitted under the section, its reliability can be trusted. And it goes on to say that the statute, meaning 115-10.1, the statute was enacted to prevent a turncoat witness from merely denying an earlier statement when the statement was made under circumstances indicating it was likely to be true. That's what we've got here, is a turncoat witness. Justice Walsh commented on the number of children that were involved here. And I think that's an important thing, is that Jama, the wife, was the breadwinner in this case. And the defendant was staying home and taking care of these seven children. Oh my goodness, what happens if he goes to prison? Who's going to take care of the seven kids? We also have, it's clear that this is a woman who puts up with abuse. She stayed with her husband after the first incidents of abuse. So the jury could reasonably infer that Jama changed her testimony at trial because she wanted to maintain that relationship with the defendant. And she needed someone to take care of the children. And for whatever reason, she loved him. As you pointed out, Justice Goldenhurst, this is a jury question. Which is more credible, the prior inconsistent statements or the testimony at trial? Now, I disagree with one of the things that defense counsel said here. He said that there was only one statement in this case. I would disagree with that because the 911 call that Jama made, she told the 911 operator that the defendant pulled a knife and pointed it at her. Then shortly thereafter, Deputy Klein arrives. And she told Deputy Klein that the defendant pulled a knife on her and threatened to kill her. Then after that, she writes a statement in her own hand stating that the defendant pointed a knife at her and threatened to kill her. There's also evidence in the record that says that the defendant kind of heaped a healthy helping of guilt on Jama right before the trial by saying, well, you're going to have to tell my kids that you killed me because you sent me off to prison. So when you put all these reasons for the jury to consider of why she recanted her testimony, I think that there is more than sufficient evidence that, given this testimony, came in under reliability. And I think it's important to notice that since Parker, every district that's considered this has held that a prior inconsistent statement admitted under 115-10.1 can support a conviction even without corroborative evidence. Now, as I say, the defendant says all of that language is dicta. I disagree with that. And I also think, I think you have to look at what is Parker really saying. And I think what Parker is really saying is that if the only evidence is a prior inconsistent statement and that prior inconsistent statement was not made for the first time until two years after the crime or lacks other indicia of reliability, then it's not a good enough prior inconsistent statement. I mean, yeah. And so you have to look at the facts of each case. But I would argue strongly that none of the language of any of these courts that have held that a prior inconsistent statement submitted substantively, it is sufficient on its own to support a conviction. And I don't see any real conflict between Parker.  As I was reading Aguilar this morning and the standing issue, I actually got an email and the Supreme Court has amended Aguilar. They didn't deal with it. It didn't affect the standing. I just want to say this about the standing question in Aguilar. In Aguilar, the defendant was charged with simply possessing a firearm when he was not at home. That's what he's charged with and that was the statute that he was challenging. And I think the Supreme Court was absolutely right that if anybody had standing to challenge the validity of this section, it was the defendant. He had a gun, a loaded gun, and he wasn't at home, and that's the section that he challenged. In any case, the modified opinion in Aguilar, as well as many other cases, do say that if part of a statute is unconstitutional, then the rest remains. Today, the Supreme Court clarified that it was only declaring the class 4 felony portions of the unlawful use of a weapon statute unconstitutional. They said, just this part. Are you challenging the standing of this defendant to make the argument? I'm not following your argument. I'm sorry, Your Honor. No, that's okay. I think that because this defendant is challenging a portion of the statute that is not being applied against him, that he does not have standing to bring it up. What portion is not being applied against him? The portion he deals with is whether it is conversations that are… I've lost my train of thought here. Well, you know what? I'm just going to move on to why the statute is valid rather than… because I don't think the standing is that relevant. There's just no doubt that this statute is constituted with your permission. Sure, of course. The Stalking Statute is constitutional since all of the acts which establish the course of contact have to be non-consensual. And the list of acts includes following, monitoring, observing, surveilling, threatening, communicating, or engaging in other non-consensual contact. That phrase, other non-consensual contact, clearly modifies following, monitoring, observing, surveilling, threatening, or communicating. All of those things have to be non-consensual. None of the defendant's examples of communication, which is the only section… this defendant was charged with threatening. But the defendant's cases deal with communication. But none of his examples of communication deal with non-consensual communication. He mentions a pharmacist, a furnace technician, and a doctor. But these are all clearly consensual communications after someone contacts the person for their expertise. Simply telling someone, well, I've got bad news for you. If you take this medicine, you might die. That's not non-consensual. And the statute makes clear that this has to be non-consensual contact. Now, the court has interpreted the prior version of this stalking statute and found it to be constitutional, and notes that the legislature's intent in enacting the statute is to prevent violent attacks by allowing the police to act before the victim is actually injured and to prevent the terror produced by harassing actions. In the current version, following, monitoring, observing, surveilling, threatening, and communicating all require unlawful, non-consensual contact. And that's in accord with the legislature's intent in amending the statute. To protect victims of stalking from the terror of stalking itself and the all-too-common homicides which follow stalking. And that's from the debates that came in the legislature before passing this statute. By construing the statute to prescribe only non-consensual conduct, the possibility that the statute would reach innocent conduct is avoided. That's exactly what the Bailey Court did in finding the older version constitutional. And this interpretation furthers the legislature's intent in enacting the statute. And it's consistent with this court's duty to affirm the statute's validity and constitutionality, if reasonably possible. And it affords an interpretation that renders the statute valid. So, if you just look at the clear language of the statute that requires that all of these versions of conduct have to be non-consensual, then clearly there can't be innocent conduct. And clearly all of the cases, all of the examples that the defendant gives fall apart. There is no non-consensual conduct between your pharmacist, your doctor, or your furnace technician. And for all of these reasons, we would argue that the statute is constitutional. And we would argue that the defendant was properly convicted. And if there are no other questions, the State would rest on its free will. Greg Bonner? I just kind of want to draw the Court's attention back to Parker and the actual wording that was used in Parker. And I'm going to quote. The issue was, quote, We believe one issue to be dispositive. Whether the defendant was proved guilty on reasonable doubt were the only evidence against him considered, I'm sorry, consisted of the prior inconsistent statements of three State witnesses which were disavowed by the witnesses that tried. So, that was the issue in Parker. And that's exactly what we have here. What we have here is significantly more egregious. Again, and I don't, maybe I'm wrong, but I don't think many cases address this, not only whether a prior inconsistent statement is alone sufficient to prove a defendant's guilt, but whether a prior inconsistent statement alone can prove that the crime ever occurred. And I guess you can analogize this to a corpus electi situation where a defendant's confession isn't even good enough standing alone when there's no evidence that the crime even occurred. I think, though, that the State is arguing there's three prior statements. Well, there were numerous prior statements in Parker, too. Yeah, and in this case, there was, Jama made a couple of statements to different people. It all came from one person, and it was just her repeating the same thing. And in Parker, there were three different statements, including the statement from the victim himself that he'd been shot in the neck. And I believe there was also evidence that the defendant in that case threatened him and he was going to come into court and be quiet or not tell the truth, one or the other. So, again, I mean, I think Parker, and then if you look further down into Parker, into the opinion, it distinguished the cases, the State side as McBowns. And, quote, the incident case also differs from McBowns because there the prosecution's entire case did not rest on disavowed prior inconsistent statements. Here, the State's entire case does rest on that. Without that, they have no case. Going on to the constitutionality, counsel argued that the course of conduct only, the way the statute reads, only refers to non-consensual contact. But if you look at the definition of course of conduct, it says course of conduct means two or more acts included, but not limited to.  And then after the mention of the non-consensual contact, it says, quote, or interferes with or damages a person's property or pet. So the statute is not limited to non-consensual contact. If there are no other questions, I'd ask that you reverse. Thank you. I guess we'll take it under advisement here, excuse me. And that is the last case for today. Thank you.